IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD P. BAKAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 1936 |
| | ) | |
| THE PAUL REVERE LIFE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

On March 7, 2006, plaintiff Edward P. Bakal ("Bakal") filed a three-count complaint in

the Circuit Court of Cook County against defendant The Paul Revere Life Insurance Company

("Paul Revere"), alleging breach of contract pursuant to an occupational disability policy issued

by Paul Revere (the "Policy") and seeking a declaratory judgment of Bakal's rights under the

Policy, along with damages pursuant to Section 155 of the Illinois Insurance Code, 215 ILCS

5/155.  After removing the case to federal court on the basis of diversity[1] and thereafter

completing the discovery process, Paul Revere filed the pending Motion for Summary Judgment,

(Dkt. No. 106), arguing that Bakal's failure to comply with certain provisions of the Policy and

his failure to satisfy the Policy's definition of "total disability" prevent Bakal from recovering on

_____

[1] Paul Revere is a corporation organized under the laws of the Commonwealth of
Massachusetts with its principal place of business located in Worcester, Massachusetts.  (Notice
of Removal of Civil Action ¶ 3.)  Bakal is a resident and citizen of the State of Illinois.  (*Id.*)
Among other relief, Bakal seeks damages "in the amount of at least $112,000 together with
prejudgment interest."  (Compl. at 4 (Count I).)

1

his claims.  For the reasons stated below, Paul Revere's Motion for Summary Judgment is granted in part and denied in part.

## LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling on a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in the non-movant's favor.  *Omega Healthcare Investors, Inc. v. Res-Care, Inc.*, 475 F.3d 853, 857 (7th Cir. 2007).  The court does not make credibility determinations or weigh conflicting evidence.  *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005).  Summary judgment will be granted in favor of the moving party if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Ultimately, "the district court need[ ] only to decide whether, based on the evidence in the record, a material dispute of fact exist[s] that require[s] trial."  *Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 914 (7th Cir. 2007).

When construing the terms of an insurance policy under Illinois law,[2] the court gives policy terms "their plain, ordinary, and popular meaning."  *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 856 N.E.2d 338, 343 (Ill. 2006).  Any ambiguities in the provisions of an insurance

---

[2] A federal court sitting in diversity applies the substantive law of the forum state.  *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 876 (7th Cir. 2005).  In this case, both parties agree that Illinois law governs interpretation of the Policy provisions.

policy are construed in favor of the insured.  *Heller v. Equitable Life Assurance Soc'y*, 833 F.2d 1253, 1256 (7th Cir. 1987).

BACKGROUND

The Policy providing occupational disability coverage to Bakal was issued by Paul Revere on August 20, 1991.  (Def.'s Local. R. 56.1(a)(3) Stmt. ¶ 1.)  Among other provisions, the Policy provides coverage in the event of "total disability."  "Total disability" is defined as follows:

> **"Total Disability"** means that because of Injury or Sickness:
>
> a.  You are unable to perform the important duties of Your Occupation; and
>
> b.  You are receiving Physician's Care.  We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.

(*Id.* ¶ 5.)  "Your occupation" is further defined as "[t]he occupation in which You are regularly engaged at the time You become Disabled."  (*Id.* ¶ 6.)

Bakal and Paul Revere do not dispute that Bakal suffers a disability, but dispute the date when Bakal became disabled, Bakal's occupation at the time he became disabled, and whether Bakal's disability falls within the Policy's definition of "total disability."[3]  For purposes of its summary judgment motion, however, Paul Revere has adopted Bakal's assertion that the onset date of his alleged disability was "no later than March 12, 2004."  (*Id.* ¶ 70; Def.'s Mem. at 2 n.1.)  At that time, Bakal had been working as a commodities trader in the pits of the Chicago Mercantile Exchange for approximately two decades.  (Def.'s Local R. 56.1(a)(3) Stmt. ¶ 13.) Bakal stopped trading commodities in the pits on March 12, 2004 and has not traded

---

[3] Although disputed, the question of Bakal's occupation at the time he became disabled is not germane to Paul Revere's arguments in support of its summary judgment motion.

commodities in the pits since that date. (*Id.*) Bakal also began electronically trading commodities from his office in downtown Chicago and from his home in February 2003. (*Id.* ¶ 14.) Bakal stopped trading electronically on January 25, 2005. (*Id.* ¶ 19.)

On August 15, 2003, Bakal sought a consultation with Dr. Robert E. Berktold regarding problems Bakal was having with the hearing in his left ear. (Pl.'s Local R. 56.1(b)(3)(C) Stmt. ¶ 11.) At the August 15, 2003 consultation, Dr. Berktold diagnosed Bakal's symptoms as Eustachian tube dysfunction potentially related to allergies, and prescribed nasal spray and seasonal allergy medication for Bakal. (Def.'s Local R. 56.1(a)(3) Stmt. ¶¶ 39-40.) When Dr. Berktold saw Bakal again on September 12, 2003, he noted Bakal's symptoms were "a little bit improved" but not "as good as I would like to see." (Pl.'s Resp. to Def.'s Local R. 56.1(a)(3) Stmt ¶ 41.) Dr. Berktold prescribed a different brand of nasal spray at that time. (Def.'s Local R. 56.1(a)(3) Stmt. ¶ 41.) Bakal's third and final consultation with Dr. Berktold was on October 24, 2003. (*Id.* ¶ 37.) Dr. Berktold's notes from the October 24, 2003 examination state that Bakal was "better today," had "minimal postnasal drip," and that his nose "was open and clear." (*Id.* ¶ 42.) Dr. Berktold increased the dosage on Bakal's nasal spray to twice per day and continued Bakal's prescription for the seasonal allergy medication. (*Id.* ¶ 43.) Dr. Berktold advised Bakal to return if he continued to have problems. (*Id.* ¶ 45.) Bakal did not return to Dr. Berktold for treatment after the October 24, 2003 consultation. (*Id.* ¶¶ 45-46.)

Approximately sixteen months after his last consultation with Dr. Berktold, Bakal met with Dr. Stephen P. Becker on February 18, 2005, to address continued symptoms of hearing

loss, ringing and tinnitus[4] in his left hear.  (Pl.'s Local R. 56.1(b)(3)(C) Stmt. ¶ 16.)  Dr. Becker

prescribed a series of tests for Bakal, including an audiogram, tympanogram, and magnetic

resonance imaging (MRI) of the head.  (Def.'s Local R. 56.1(a)(3) Stmt. ¶ 49.)  The audiogram

and tympanogram tests were performed on February 25, 2005 and detected hearing loss in

Bakal's left ear.  (*Id.* ¶ 50.)  The MRI scans of Bakal's head and brain were obtained on February

22, 2005 and February 24, 2005 and demonstrated symptoms consistent with an intracochlear

neuroma.[5]  (*Id.* ¶ 51.)  At a consultation on March 4, 2005, Dr. Becker reviewed the audiogram

test results with Bakal and advised him that he had severe hearing loss and suffered from

pulsatile tinnitus.  (Pl.'s Local R. 56.1(b)(3)(C) Stmt. ¶ 18.)  On April 1, 2005, Dr. Becker

completed the review of the MRI results with Bakal and advised Bakal that he had an

intracochlear neuroma inside his left ear.  (*Id.*)  Dr. Becker referred Bakal to an otologist, Dr.

Edward L. Applebaum, for treatment of the neuroma.  (*Id.* ¶ 19.)

Dr. Applebaum performed his first examination of Bakal on April 6, 2005, which

included a repeat audiogram and a word recognition score test.  (Pl.'s Resp. to Def.'s Local R.

56.1(a)(3) Stmt. ¶¶ 57-58.)  At the April 6, 2005 consultation, Dr. Applebaum opined that Bakal

had diminished hearing and word recognition in his left ear and that the hearing in his right ear

was essentially normal.  (Def.'s Local R. 56.1(a)(3) Stmt. ¶ 59.)  Dr. Applebaum further opined

that Bakal's left-side hearing loss was due to an intracochlear neuroma and recommended

ongoing observation of the neuroma, including MRI studies every six months.  (*Id.* ¶ 60.)  Dr.

---

[4] "Tinnitus is a noise in the ears [and] may be described as buzzing, ringing, roaring,
whistling, or hissing and is sometimes variable and complex."  THE MERK MANUALS ONLINE
MEDICAL LIBRARY (online at www.merck.com).

[5] An intracochlear neuroma is a type of tumor.  (Pl.'s Local R. 56.1(b)(3)(C) Stmt. ¶ 18.)

Applebaum performed follow-up examinations of Bakal on October 24, 2005, April 26, 2006, and November 1, 2006. (*Id.* ¶ 62.)

Pursuant to the terms of the Policy, "[w]ritten notice of claim must be given to [Paul Revere] within 30 days after a covered loss starts, or as soon as reasonably possible." (*Id.* ¶ 9.) On April 12, 2005, Bakal mailed a notice of claim form to Paul Revere, claiming disability caused by "tumor in left inner ear, hearing loss, [and] pulsatile tinnitus." (*Id*. ¶¶ 21, 23.) The Policy also states:

> Written proof of loss must be sent to [Paul Revere] within 90 days after the end of a period for which You are claiming benefits. If that is not reasonably possible, Your claim will not be affected. But, unless You are legally incapacitated, written proof must be given within one year.

(*Id.* ¶ 10.) Bakal signed Sections B and C of the written proof of loss form on May 4, 2005 and mailed them to Paul Revere. (*Id.* ¶¶ 25-26.) Section A of the written proof of loss form, the "Attending Physician's Statement," was signed by Bakal's treating otolaryngologist, Dr. Becker, on May 20, 2005, and thereafter submitted by Bakal to Paul Revere. (*Id.* ¶¶ 29, 34.) In the Attending Physician's Statement, Dr. Becker acknowledged that "[t]he patient has severe hearing loss and is unable to interpret different sounds." (*Id.* ¶ 31.) Dr. Becker opined that Bakal's medical limitations began on April 1, 2005. (*Id.* ¶¶ 32-33.) Later, in a June 3, 2005 letter faxed to Paul Revere, Dr. Becker stated "we would like to change the date [Bakal's] restrictions started from April 1, 2005 to February 25, 2005, which is when I confirmed the diagnosis with an audiogram and tympanogram." (*Id.* ¶ 36.)

In a letter dated June 2, 2005, Paul Revere acknowledged receipt of Bakal's disability claim. (Pl.'s Local R. 56.1(b)(3)(C) Stmt. ¶ 31.) Paul Revere then paid Bakal $28,000.00 for the period May 26, 2005 through September 26, 2005. (*Id.* ¶ 32.) However, on October 28, 2005,

Paul Revere notified Bakal that "[w]e have determined that the hearing loss in your left ear does not preclude you from working as an electronic trader," and Paul Revere stopped paying Bakal disability benefits at that time.  (*Id.* ¶ 34.)  Bakal filed the lawsuit now before this court in March 2006.

ANALYSIS

Paul Revere contends that Bakal cannot recover disability benefits under the Policy as a matter of law because the undisputed material facts show that Bakal: (1) failed to submit timely notice of his claim; (2) failed to submit timely proof of loss to Paul Revere; and (3) was not "under the regular and personal care of a Physician" on March 12, 2004.  The court addresses each of these arguments in turn.

1.      Notice of Claim

Pursuant to the terms of the Policy, Bakal was required to file notice of his disability claim with Paul Revere "within 30 days after a covered loss starts, or as soon as reasonably possible."  (Def.'s Local R. 56.1(a)(3) Stmt. ¶ 9.)  Paul Revere argues that the April 12, 2005 notice of claim was not filed within 30 days of the onset of Bakal's disability, nor was the notice filed "as soon as reasonably possible" after the onset of Bakal's disability.  Because of his failure to fulfill this condition precedent, Paul Revere argues that Bakal cannot succeed on his claim for coverage under the terms of the Policy.  Bakal contends that his notice of claim was timely filed and further asserts that Paul Revere has waived its right to rely on the notice of claim provision as a defense to liability under the Policy.

A.      Waiver

"[N]otice of claim provisions in insurance policies are valid prerequisites to coverage" under Illinois law. *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1169 (7th Cir. 1998) (citing *State Sec. Ins. Co. v. Burgos*, 583 N.E.2d 547, 551 (Ill. 1991)); *see also Livorsi Marine, Inc.*, 856 N.E.2d at 343 (insurance policy notice provisions are properly construed as imposing valid prerequisites to insurance coverage). Requiring timely notice of a claim "enable[s] the insurer to make a timely and thorough investigation of a claim and to protect itself against unjustifiable claims." *State Farm Mut. Auto. Ins. Co. v. Gray*, 570 N.E.2d 472, 474-75 (Ill. App. Ct. 1st Dist. 1991). "Breaching a policy's notice clause by failing to give reasonable notice will defeat the right of the insured party to recover under the policy." *Livorsi Marine, Inc.*, 856 N.E.2d at 343. On the other hand, an insurer may waive a policy defense if the "insurer does something intentionally or impliedly by its actions, words, knowledge or conduct that is inconsistent with the intention to rely on the requirements of the policy." *Rabin v. Provident Life & Accident Ins. Co.*, No. 98 C 1577, 2000 WL 1131944, at *15 (N.D. Ill. Aug. 9, 2000) (Plunkett, J.); *see also Gray*, 570 N.E.2d at 475.

In this case, Bakal argues that Paul Revere waived both its notice of claim defense and its proof of loss defense "because it began to make payments without any mention of such defense[s]." (Pl.'s Resp. Mem. at 11.) Generally, "the mere initial payment of benefits is not enough to demonstrate waiver." *Rabin*, 2000 WL 1131944, at *15. Furthermore, in making its initial payments to Bakal on August 15, 2005, and September 30, 2005, Paul Revere expressly reserved its right to assert defenses based on the terms of the Policy, stating:

> This payment and any possible future payments, until we advise you otherwise, are being made under Reservation of Rights. This means that the payment cannot be construed as an admission of past, present or future liability and *we reserve our right*

*to enforce any and all provisions of the policy*.

(Def.'s Resp. to Pl.'s Local R. 56.1(b)(3)(C) Stmt. ¶ 32, Ex. B & C (emphasis added).)  Paul

Revere's statements are inconsistent with an intention to relinquish its rights under the Policy,

and the accompanying payments cannot be construed as an implied waiver of Paul Revere's right

to pursue defenses based on the notice of claim or proof of loss provisions.

Bakal also asserts that Paul Revere waived its right to these defenses when it based its

denial of liability upon grounds "other than the insured's failure to give notice or file a proof of

loss."  (Pl.'s Resp. Mem. at 12.)  However, the legal support cited by Bakal on this point relates

only to proof of loss provisions.  *See* 22A Ill. Law & Prac. Insurance § 426; *Gray*, 570

N.E.2d at 475.  The general rule alluded to by Bakal appears to have developed as a means of

protecting the insured who has been misled into believing that further actions to comply with the

proof of loss provision would be futile.  *See Jones v. Universal Cas. Co.*, 630 N.E.2d 94, 101 (Ill.

App. Ct. 1st Dist. 1994) ("[t]he courts have held that the insured should not be required to

perform what would appear to be a useless act"); *Tibbs v. Great Cent. Ins. Co.*, 373 N.E.2d 492,

494 (Ill. App. Ct. 5th Dist. 1978); *Tarzian v. West Bend Mut. Fire Ins.* Co., 221 N.E.2d 293, 300

(Ill. App. Ct. 1st Dist. 1966); *Stoltz v. National Indemnity Co.*, 104 N.E.2d 320, 324 (Ill. App. Ct.

1st Dist. 1952).  Bakal has made no argument why this rule should also apply to notice of claim

provisions, and the court declines to undertake this analysis on its own.

Because the court finds no waiver of Paul Revere's right to rely on the Policy's notice of

claim provision, the court must next assess whether a disputed question of fact exists as to

whether Bakal's notice of claim was timely filed pursuant to the terms of the Policy.

B.    30-Day Requirement

9

The Policy's notice of claim provision required Bakal to file notice of his claim "within 30 days after a covered loss starts, or as soon as reasonably possible." (Def.'s Local R. 56.1(a)(3) Stmt. ¶ 9.) As discussed above, for purposes of its summary judgment motion, Paul Revere has adopted Bakal's position that "[n]o later than March 12, 2004, Bakal became totally disabled,[6] as that term is defined in the Policy." (Def.'s Mem. at 2 n.1; Def.'s Local R. 56.1(a)(3) Stmt. ¶ 70.)

Bakal admits that he first filed notice of his claim with Paul Revere on April 12, 2005, and generally does not dispute that this notice was not filed within 30 days of March 12, 2004. Rather, Bakal's argument on this point stresses that "[i]f, as the defendant contends, Bakal's disability did not commence until February 25, 2005, there would be no question that Bakal's notice was timely." (Pl.'s Resp. Mem. at 7.) Bakal's argument ignores Paul Revere's stipulation and fails to recognize that the court views the facts in the light most favorable to the non-movant on a motion for summary judgment. In other words, the court assumes that a jury would agree with Bakal's assertion that his disability began on March 12, 2004. Under this procedural posture, there is no dispute that Bakal's notice of claim was not filed within 30 days after the start of Bakal's disability.[7]

C.    "As Soon As Reasonably Possible"

---

[6] Although Paul Revere does not dispute the onset date of Bakal's alleged disability, it does argue that Bakal did not meet the definition of "total disability" at that time. This argument is addressed in the opinion below.

[7] To the extent Bakal argues that his "covered loss" did not actually commence until 91 days after the date of disability, (Pl.'s Resp. Mem. at 7 n.2), this argument is made only with respect to the February 25, 2005 date. The argument is moot as to the March 12, 2004 date of disability, because calculating the covered loss in this manner would not have the effect of bringing Bakal's April 12, 2005 filing within the 30-day deadline.

Bakal's notice of claim may still be considered timely under the terms of the Policy if it was filed "as soon as reasonably possible" after the start of his disability. Under Illinois law, such language is generally interpreted to mean within a reasonable time. *See, e.g., Livorsi Marine, Inc.*, 856 N.E.2d at 343 ("A policy condition requiring notice '[a]s soon as practicable' is interpreted to mean 'within a reasonable time.'"); *Royal Maccabees Life Ins. Co. v. Parker*, No. 98 C 50422, 2001 WL 1110489, at *8 (N.D. Ill. Sept. 20, 2001) (Reinhard, J.) (policy language requiring notice "as soon as it is reasonably possible" is interpreted "to mean the insured must notify the insurer within a reasonable time") (vacated by settlement). Whether notice has been given within a reasonable time depends on the facts and circumstances of each case. *Id.* Factors to consider include: "(1) the language of the policy's notice requirement; (2) the extent of the insured's sophistication in the world of commerce and insurance; (3) awareness on the part of the insured that an 'occurrence' has taken place; and (4) once aware of an occurrence, the diligence with which the insured ascertains whether coverage is available." *Ankus v. Gov't Employees Ins. Co.*, 674 N.E.2d 865, 870 (Ill. App. Ct. 1st Dist. 1996); *see also Royal Maccabees Life Ins. Co.*, 2001 WL 1110489, at * 8; *Rabin*, 2000 WL 1131944, at *13; *River*, 160 F.3d at 1170; *Livorsi Marine, Inc.*, 856 N.E.2d at 344. Prejudice to the insurer should also be considered, although lack of prejudice will not excuse a delay in notice that is otherwise unreasonable. *Livorsi Marine, Inc.*, 856 N.E.2d at 346. Ultimately, whether notice was given within a reasonable time is a question of fact for the jury. *Rivota v. Kaplan*, 364 N.E.2d 337, 345 (Ill. App. Ct. 1st Dist. 1977) (citing *Higgins v. Midland Cas. Co.*, 118 N.E. 11, 14 (Ill. 1917)). However, "where the facts are undisputed, the question of the sufficiency of notice becomes a question of law and summary judgment is proper where no fair-minded person could draw

different inferences from those facts." *Bhd. Mut. Ins. Co. v. Roseth*, 532 N.E.2d 354, 357 (Ill. App. Ct. 1st Dist. 1988) (internal citations omitted).

The parties' main dispute over notice involves the third factor—the point in time when Bakal became aware that he had a claim for "total disability" benefits. For purposes of Paul Revere's summary judgment motion, it is undisputed that Bakal stopped pit trading on March 12, 2004, because his hearing impairment made it impossible for him to work as a pit trader. (Pl.'s Local R. 56.1(b)(3)(C) Stmt. ¶¶ 5-6.) Based on this undisputed fact, Paul Revere argues that Bakal "obviously was aware of the impact of his hearing loss and tinnitus on his ability to pit trade at least by March 12, 2004." (Def.'s Mem. at 13.) Bakal admits that he stopped pit trading because he was unable to perform the important duties of his job on March 12, 2004, but contends that he was hoping the impairment was temporary and that he would eventually be able to return to work as a pit trader. (Pl.'s Local R. 56.1(b)(3)(C) Stmt. ¶¶ 13, 20.) Once he was diagnosed with an intracochlear neuroma on April 1, 2005, Bakal asserts that he finally "understood the devastating impact of his condition on his occupation as a pit trader." (*Id.* ¶ 20.) Bakal filed his notice of claim with Paul Revere eleven days later.

The undisputed facts and circumstances surrounding Bakal's delay in filing notice with Paul Revere are not sufficiently clear-cut as to support summary judgment in Paul Revere's favor. *See Vogelsang v. Credit Life Ins. Co.*, 255 N.E.2d 479, 483 (Ill. App. Ct. 3d Dist. 1970) ("the lapse of time in and of itself did not constitute a sufficient basis for determining plaintiff's diligence or lack thereof as a matter of law"). On the one hand, a fair-minded jury could find that someone with Bakal's background reasonably believed his hearing loss was caused by allergies that would disappear over time or could be controlled or eliminated by taking the

12

medications prescribed by Dr. Berktold, and that it was reasonable for Bakal to wait until the full

impact of his hearing impairment became clear to him before filing notice of his claim.

(*Compare* Def.'s Mem. at 13 (describing Bakal as "a former self-employed pit trader, computer

trader, and current real estate investor and developer (with a B.A. in Economics)") *with River*,

160 F.3d at 1171 (insured "had contracted with a number of insurance companies in the past,

held a number of different disability policies, and sought professional assistance from his

attorney in giving notice to his disability insurers").)  Of course, a fair-minded jury could also

find that Bakal was unreasonable in failing to diligently pursue a claim for "total disability"

benefits from the moment he knew that he was unable to work as a pit trader due to his hearing

impairment.  It is ultimately for the jury to decide whether Bakal reasonably waited thirteen

months from the onset of his disability until filing notice of his claim.  Paul Revere's request for

summary judgment on the issue of Bakal's alleged failure to file a timely notice of claim is

therefore denied.

2.     Written Proof of Loss

Paul Revere has also alleged Bakal failed to file a written proof of loss within 90 days of

the period for which Bakal is claiming benefits.  The written proof of loss requirement is

governed by section 9.4 of the Policy, which reads as follows:

> Written proof of loss must be sent to Us within 90 days after the end of a period for
> which You are claiming benefits.  If that is not reasonably possible, Your claim will
> not be affected.  But, unless You are legally incapacitated, written proof must be
> given within one year.

(Def.'s Local R. 56.1(a)(3) Stmt. ¶ 10.)

Paul Revere argues that, like notice of claim provisions, proof of loss provisions are also

valid prerequisites to coverage such that "failure to submit proof of loss within the Policy's specified time period *completely bars* [Bakal's] right to recover benefits under the Policy." (Def.'s Reply Mem. at 11 (emphasis added).)  The court disagrees.  According to the plain language of the Policy, written proof of loss is required "after the end of a period for which You are claiming benefits."  In other words, written proof of loss appears to be a prerequisite only to receiving benefits for any given benefits period.  Other language in the Policy supports this interpretation.  (*See* Policy ¶ 9.6 ("After We receive satisfactory written proof of loss . . . We will pay at the end of each 30 days any benefits due that are payable periodically — subject to continuing proof of loss.").)

Neither of the cases relied upon by Paul Revere support its position on this issue, in part because neither case relies on the insured's failure to satisfy a written proof of loss requirement for its holding.  *See May v. Nat'l Life Ins. Co.*, No. 96 C 616, 1997 WL 461085, at *9 (N.D. Ill. Aug. 8, 1997) (Coar, J.); *Rintoul v. Sun Life Assurance Co. of Canada*, 142 F.2d 776, 778 (7th Cir. 1944).  The language of *Rintoul* cited by *May* states, in whole:

> Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary and popular sense, and while the failure to give notice or to make proof within a specified time in accordance with the terms of a policy, as a general rule, does not operate as a forfeiture of the right to recover, yet where the policy in express terms makes the giving of notice a condition precedent, a failure to comply with the terms of the policy will bar recovery.

*Rintoul*, 142 F.2d at 777-78 (citations omitted).  In this case, Paul Revere has directed the court to no express provisions of the Policy suggesting that a complete bar to recovery is appropriate when written proof of loss has not been timely submitted for the first applicable benefits period after the onset of an insured's disability.  In accordance with Illinois law, this court "refuse[s] to

add to and construe the policy beyond its clear and obvious language." *Heller*, 833 F.2d at 1257.

On the other hand, the court also cannot accept Bakal's assertion that "[t]he clock has not yet started ticking on when Bakal must submit his proof of loss" because Bakal "continues to suffer from his disability to this very day." (Pl.'s Resp. Mem. at 14.) Each of the cases cited by Bakal in support of this proposition involves policy language stating that written proof of loss is required "within 90 days after the end of the period for which we are liable" (or similar language). *See Knoepler v. Guardian Life Ins. Co.*, 438 F.3d 287, 289 (3d Cir. 2006); *Clark v. Mass. Mut. Life Ins. Co.,* 749 F.2d 504, 505 (8th Cir. 1984); *Panepinto v. N.Y. Life Ins.*, 688 N.E.2d 241, 242 (N.Y. 1997); *Kaplan v. Nw. Mut. Life Ins. Co.*, 990 P.2d 991, 997 (Wash. Ct. App. 2000). This language is materially different from the language in the Policy, as it focuses on the period of liability rather than the period for which benefits are claimed.

In accordance with the approach relied upon in *Rintoul*, this court looks to the plain language of sections 9.4 and 9.6 of the Policy in determining that the written proof of loss requirement is limited to each separate period for which Bakal is claiming benefits. In other words, "in order to obtain benefits under the contract, [the insured] must submit proof of loss within 90 days of the end of any period (*e.g.*, month) for which he is claiming benefits," or as soon as reasonably possible within a year, so long as he is not legally incapacitated. *Korn v. Paul Revere Life Ins. Co.*, 238 Fed. Appx. 109, 111 (6th Cir. 2007); *see also Falco v. Unum Provident Corp.*, No. 2:04-cv-04540-ENV-WDW, 2007 WL 1014568, at *6 n.9 (E.D.N.Y. Mar. 30, 2007) (Vitaliano, J.). It is within this framework that the duties and obligations of both parties must be assessed.

Ultimately, the written proof of loss requirement does not impact Bakal's claims in this

case.  In the analysis below, the court has determined that the physician's care provision precludes Bakal from recovering "total disability" benefits for any period prior to February 18, 2005.  According to the terms of the Policy, Bakal's written proof of loss was due within 90 days "after the end of a period for which You are claiming benefits."  A 30-day benefit period beginning on February 18, 2005 ends on March 20, 2005, and Bakal's submission of written proof of loss on May 20, 2005[8] falls well within 90 days of this date.

3.     Physician's Care Requirement

     Paul Revere also argues that Bakal is barred from recovering under the terms of the Policy because he did not satisfy the full definition of "total disability" on March 12, 2004.  The Policy defines "total disability" as follows:

> **"Total Disability"** means that because of Injury or Sickness:
>     a.    You are unable to perform the important duties of Your Occupation; and
>     b.    You are receiving Physician's Care.  We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.

(Def.'s Local R. 56.1(a)(3) Stmt. ¶ 5.)  The Policy further clarifies that "Physician's Care means the regular and personal care of a Physician which, under prevailing medical standards, is appropriate for the condition causing the disability."  (*Id.* ¶ 7.)  Paul Revere argues that Bakal is precluded from recovering "total disability" benefits under the terms of the Policy because the undisputed material facts show that Bakal was not receiving the regular and personal care of a physician at the time of the onset of his disability.

---

[8] Paul Revere asserts that Bakal's written proof of loss was not submitted until the Attending Physician's Statement was sent to Paul Revere, an event that did not occur until May 20, 2005.  Because Bakal does not make any argument that the written proof of loss requirement was satisfied at an earlier date, the court accepts May 20, 2005 as the date of submission.

The Policy itself does not identify a particular point in time when the insured must meet the definition of "totally disability" to recover benefits. Paul Revere argues that Bakal must satisfy both prongs of the "total disability" definition on the date his disability began, or he cannot recover "total disability" benefits at any point in time. Reviewing the plain language of the Policy, the court finds no textual support for Paul Revere's position. Moreover, at least one court has found a similar policy provision to be ambiguous and, consequently, to be appropriately construed in favor of the insured. *Kennedy v. Mass. Mut. Life Ins. Co.*, No. 06 C 1341, 2007 WL 3374587, at *4 (N.D. Ill. Nov. 9, 2007) (Kennelly, J.). However, in *Kennedy* the provision requiring that "[t]he Insured must be under a Doctor's Care" stood as its own sentence, apart from the remainder of the definition for "total disability." *Id.* at *3. In this case, the physician's care requirement is clearly a part of the "total disability" definition, and the court finds a common sense reading of the Policy as a whole leads to the conclusion that the insured must satisfy both parts of the "total disability" definition during any period for which the insured is claiming "total disability" benefits. *See Mack v. Unum Life Ins. Co. of Am.*, 471 F. Supp. 2d 1285, 1291-92 (S.D. Fla. 2007) (Johnson, Mag. J.) (finding that "for the three periods of time identified herein [the insured] did not comply with a condition precedent to coverage under the Policy [the physician's care requirement], thereby barring recovery of benefits *for said time periods*") (emphasis added).

Paul Revere cites to *May v. National Life Insurance Company* as an example of a case in which the insured was denied recovery under the terms of the insurance policy because he was not under the regular or prudent care of a physician. *May*, 1997 WL 461085, at *6. The problem with Paul Revere's reliance on *May* is that nowhere in the court's opinion does *May* address the

question of *when* a physician's care requirement must be satisfied in order to recover benefits. The court notes only that the physician's care requirement must be satisfied "during the relevant period." *Id.* at *5. Without more, *May* does not support Paul Revere's position that a physician's care requirement must be satisfied as of the date the insured becomes disabled.

Under Illinois law, provisions requiring that an insured be under the "regular care" of a physician have generally been construed to mean "the insured is obligated to periodically consult and be examined by his or her treating physician at intervals to be determined by the physician." *Heller*, 833 F.2d at 1257. The undisputed evidence in this case demonstrates that Bakal was not receiving the regular and personal care of a physician from October 24, 2003 to February 18, 2005. In the fall of 2003, Bakal saw Dr. Berktold three times for symptoms including tinnitus/ringing in his left ear, retracted left eardrum, stuffy nose, postnasal drip, and hoarseness. (Def.'s Local R. 56.1(a)(3) Stmt. ¶¶ 37-38, 41-42.) On October 24, 2003, after noting that Bakal was "better today," Dr. Berktold told Bakal to return if he continued to have problems. (*Id.* ¶ 42, 45.) It is undisputed that Bakal never returned to Dr. Berktold, despite the fact that his ailments did not get better and in fact worsened to the point that he could no longer work as a pit trader as of March 2004. (*Id.* ¶ 46; Pl.'s Local R. 56.1(b)(3)(C) Stmt. ¶ 5.) The fact that Bakal continued to take medication prescribed by Dr. Berktold does not by itself satisfy the physician's care requirement, when Dr. Berktold's standard of care included recommended follow-up appointments that Bakal neglected to schedule or attend. *See Mack*, 471 F. Supp. 2d at 1290-91. Because Bakal did not return to Dr. Berktold for further care at the interval Dr. Berktold prescribed (*i.e.*, "if he continued to have problems"), Bakal cannot be considered to have been under Dr. Berktold's care in March 2004 or anytime thereafter.

Bakal did not consult with any other physician to treat his hearing problems until February 18, 2005. (Def.'s Local R. 56.1(a)(3) Stmt. ¶ 47.) Simply put, no physician was attending to or caring for Bakal's disability for the approximately sixteen-month period from October 24, 2003 to February 18, 2005. *Cf. Traum v. Equitable Life Assurance Society of U.S.*, 240 F. Supp. 2d 776, 788 (N.D. Ill. 2002) (Hart, J.). "Although 'regular care' does not require monthly visits with accompanying monthly reports, it does require some form of continuity in the insured's treatment by physicians." *May*, 1997 WL 461085, at *6 (internal citation omitted). Because Bakal cannot satisfy the physician's care requirement from March 12, 2004 to February 18, 2005, Bakal is barred from receiving "total disability" benefits for this period.

On the other hand, it is undisputed that Bakal was under the regular care of a physician, Dr. Becker, for treatment of his disability from February 18, 2005 forward. As discussed above, the physician's care provision will not bar Bakal from receiving "total disability" benefits for any benefits period during which he can satisfy both prongs of the "total disability" definition. *Compare Stinnett v. Nw. Mut. Life Ins. Co.*, 101 F. Supp. 2d 720, 722 (S.D. Ind. 2007) (Tinder, J.) (insurance company did not dispute payment of benefits after insured obtained regular physician's care, despite gap in time between initial onset of disability and procurement of physician's care).

Physician's care requirements serve two purposes. First, they operate "to determine that the claimant is actually disabled, is not malingering, and to prevent fraudulent claims." *Heller* 833 F.2d at 1257 (internal citation omitted). Physician's care requirements are also employed to "minimiz[e] the insurer's loss under the policy in cases in which the insured's disability can benefit from a physician's care." *Stinnet*, 101 F. Supp. 2d at 725. Accordingly, where further

treatment would be futile *and* there is adequate alternative proof of a disability, a physician's care requirement will not be strictly enforced. *Id.* at 726.

Bakal argues that he is excused from satisfying the physician's care requirement because treatment would have been futile in his case. Most of the evidence cited by Bakal in support of this assertion involves testimony by Bakal's doctors as to the proper treatment of Bakal's neuroma *after* it had been diagnosed. (Pl.'s Local R. 56.1(b)(3)(C) Stmt. ¶¶ 35-36, 38.) Bakal does cites the deposition testimony of his expert, Dr. Michael D. Seidman, who stated that "with the benefit of hindsight" he believes the only effective treatment for Bakal's tumor in 2003 would have been ongoing observation. (*Id.* ¶ 37; Seidman Tr. 54:11-23.) However, as noted by Paul Revere, elsewhere in his deposition testimony Dr. Seidman lists various ways in which Bakal's *hearing loss and tinnitus* could have been treated in 2004, including dietary modifications, tinnitus masking devices, and medication. (Def.'s Resp. to Pl.'s Local R. 56.1(b)(3)(C) Stmt. ¶ 37.) It is not at all clear that, at the time of onset, further care for Bakal's disability (or symptoms) would have been futile. Moreover, Bakal has not directed the court to any other objective evidence of his disability prior to February 18, 2005. On the record before it, the court finds no reason that Bakal should be exempt from the physician's care requirement stated in the Policy.

Because the physician's care provision does not bar Bakal from recovering "total disability" benefits for any benefits period after February 18, 2005, Paul Revere's request for summary judgment on these grounds is denied.

4.      Statutory Penalties

Finally, because there is a *bona fide* dispute as to coverage under the terms of the Policy, Bakal's claim for statutory damages pursuant to Section 155 of the Illinois Insurance Code fails as a matter of law. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000). Summary judgment is therefore granted in favor of Paul Revere on Count III of Bakal's Complaint, the Section 155 claim.

## CONCLUSION

For the reasons stated above, Paul Revere's Motion for Summary Judgment is granted in part and denied in part. Disputed questions of fact preclude summary judgment on Bakal's breach of contract and declaratory judgment claims; summary judgment is granted in favor of Paul Revere on Bakal's claim for statutory relief. Status hearing scheduled for 10/2/2008 at 9:00 a.m. for purposes of setting further dates. The parties are strongly encouraged to discuss settlement.

ENTER:

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date:   September 10, 2008